# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ABDUL LOVE, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:18-CV-2000-NJR-RJD |
| DR. PERCY MYERS, LARUE LOVE, CHRISTOPHER THOMPSON, JOHN BALDWIN, and JANE DOES 1-2, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter came before the Court on a Motion for Preliminary Injunction filed by Plaintiff Abdul Love (Doc. 24). The Court held an evidentiary hearing on the motion on May 9, 2019 (Doc. 61). For the reasons set forth below, the motion is denied.

### BACKGROUND

Plaintiff Abdul Love, an inmate of the Illinois Department of Corrections, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging Defendants have been deliberately indifferent to his Crohn's disease, which causes daily bloody bowel movements, severe stomach cramps, gas, bloating, diarrhea, and fecal incontinence (Doc. 1, pp. 5-15). Specifically, Love alleges Defendants have failed to timely schedule medical visits, failed to timely refer him to specialists, persisted in a course of treatment known to be ineffective, failed to follow a specialist's recommendations, offered no treatment at all,

and/or condoned such behavior (*Id.*). Love alleges that, at all relevant times, Defendant Dr. Percy Myers was the Pinckneyville Medical Director, Defendant LaRue Love was the Assistant Warden of Programs, Defendant Scott Thompson was the Warden/Acting Warden of Pinckneyville, and Defendant John Baldwin was the IDOC Director (*Id.*).

After threshold review of the Complaint pursuant to 28 U.S.C. § 1915A, Love was permitted to proceed on one claim:

> **Count 1:** Jane Does #1-2, Myers, Love, Thompson, and Baldwin were deliberately indifferent to Plaintiff's Crohn's disease in violation of the Eighth Amendment.

On February 11, 2019, Love filed a Motion for Preliminary Injunction (Doc. 24) seeking an order directing the Defendants to: (1) start Love on azathioprine as instructed by his outside specialist, Dr. Bozdech; (2) schedule Love for a follow-up appointment with Dr. Bozdech as directed; (3) expunge a disciplinary ticket for dangerous written communications; and (4) transfer Love to Centralia, Big Muddy, or Shawnee to ensure his safety against retaliation. Love argues that injunctive relief is essential both to ensure adequate medical care for his Crohn's disease and to stop the "campaign of harassment" he has endured since filing this lawsuit.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the

lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating he (1) has a reasonable likelihood of success on the merits; (2) has no adequate remedy at law; and (3) will suffer irreparable harm absent an injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Regarding irreparable harm, this requirement eliminates those cases where, although the ultimate relief sought is equitable, the plaintiff can wait until the end of trial to get that relief. *Id.* Only if the plaintiff will suffer irreparable harm in the interim—that is, before a final judgment—can he obtain a preliminary injunction. *Id.*

The Seventh Circuit has described injunctions like the one sought here, requiring an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)).

### Discussion

Love's request that the Court order Defendants to expunge a disciplinary ticket for dangerous written communications and transfer him to another prison to ensure his safety against retaliation can be disposed of easily, as the requested relief has no connection to his claim in this lawsuit. "[A] party [seeking] a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and

the conduct asserted in the complaint." *Johnson v. City of Rock Island, Ill.*, No. 11-CV-4058, 2012 WL 5425605, at *1 (C.D. Ill., Nov. 6, 2012) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). Because that connection is lacking here, Love is not entitled to injunctive relief as to those requests.

With regard to his medical care, Love asserts in his motion that he first spoke with Dr. Myers on June 3, 2018, and informed Dr. Myers about his history with Crohn's, his current symptoms and treatment plan, and how, after three rounds of mesalamine enemas (medication applied rectally), they were no longer working. He also told Dr. Myers that his gastroenterologist, Dr. Bozdech, recommended moving him up to azathioprine in the event the enemas were not effective after the second round of treatment and directed that Love return in one year for a follow-up appointment.

Instead of following Dr. Bozdech's instructions, Love claims Dr. Myers extended use of the mesalamine enemas for six months and requested a consult for Love to see a local gastroenterologist rather than Dr. Bozdech. When his Crohn's symptoms began worsening in August 2018, Dr. Myers requested and granted approval for Love to receive a colonoscopy. The colonoscopy was later canceled, though, based on observations by nursing staff while Love was housed in the health care unit in September 2018.

Love contends that despite the continued mesalamine enemas, his condition has not improved. He still has daily bloody bowel movements, gas, bloating, severe stomach cramps, constipation, diarrhea, and fecal incontinence. At the time he filed his motion for preliminary injunction, he had been housed in the health care unit since January 11, 2019, so that the nursing staff could monitor his stools and enemas. Even his own nurse

practitioner has suggested following the gastroenterologist's instruction to switch his medication. Love argues that a rational jury could conclude that Dr. Myers has and continues to consciously disregard Love's symptoms, refuses to put him on azathioprine, and has denied him a follow-up appointment with Dr. Bozdech, thereby causing him pain.

In response, Dr. Myers argues that Love is not likely to succeed on the merits of his deliberate indifference claim because his Crohn's disease has been constantly monitored. On July 14, 2017, Love saw Dr. Bozdech, who explained that Love's last colonoscopy showed active Crohn's colitis in a short segment of his bowel (Doc. 54-1; 54-8). Love was placed on daily mesalamine enemas. Dr. Bozdech opined that if Love experienced another flare up, daily mesalamine enemas should be used again (*Id.*). If the course of mesalamine enemas was not effective, then a different medication may be needed (*Id.*). A course of mesalamine enemas is typically 4-5 weeks (Doc. 54-8).

Love was transferred to Pinckneyville in May 2018. In August 2018, Love reported to Dr. Myers that he was concerned his Crohn's was becoming uncontrolled due to his cramping, fecal incontinence, and 15-20 bloody stools a day. Love's lab tests came back normal,[1] however, so Dr. Myers admitted Love into the health care unit to monitor his condition (Doc. 54-1). Love was to inform the nursing staff when he had a bowel movement so it could be observed and documented (Doc. 54-2). Over the course of a week, however, Love never had more than two bowel movements a day with very

---

[1] Dr. Myers attested that when a patient is experiencing a Crohn's flare up, his autoimmune and inflammatory processes are triggered and one would expect to see a rise in the white blood cell count, Sed (sedimentation) rate, and C-Reactive Protein (CRP) numbers (Doc. 54-8).

minimal blood (Doc. 54-8). Dr. Myers also was informed by staff that instead of taking the daily mesalamine enemas, Love was observed flushing them down the toilet (*Id.*). Based on the lab results and the nurse's observations, Dr. Myers determined there was no need to follow up with a specialist at that time (*Id.*).

Love did not report another flare up until January 11, 2019, when he reported having four to five bloody stools a day (*Id.*). He again was admitted for monitoring. Once admitted, Love refused the enemas and declared a hunger strike that prevented him from passing stool to be observed (*Id.*). Love remained under observation until February 15, 2019. During that time, he did not have bloody stools or report any pain or cramping. His blood test results were normal as well. When he began taking the enemas, the blood in his stool was minimal (*Id.*). Upon discharge, Dr. Myers prescribed prednisone because it is recommended by the American Academy of Gastroenterologists for Love's type of Crohn's disease (*Id.*). However, Love refused to take the prednisone. Currently, Love's symptoms are controlled, and he faces no serious medical emergency (*Id.*). In sum, Dr. Myers argues, he has been treating Love, and Love does not have a constitutional right to dictate his treatment plan. Because Love is not likely to succeed on the merits of his deliberate indifference claim, the motion for preliminary injunction should be denied.

Like Dr. Myers, the IDOC Defendants also argue Love cannot succeed on the merits of his deliberate indifference claim against them, for it is well-settled that non-medical defendants cannot be held liable for depending on medical providers' exercise of judgment and treatment. *Giles v. Godinez*, No. 15-3077, 2019 WL 349423 (7th Cir. Jan. 29, 2019). Here, it is clear from Love's medical records that he was receiving constant

medical treatment and supervision from Wexford medical staff. And just because Love did not personally agree with Dr. Myers's course of treatment, that does not rise to the level of deliberate indifference. *See, e.g., Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Accordingly, they argue, the motion should be denied.

The Court agrees with Defendants. Although it is true that a medical provider can be found deliberately indifferent for continuing a course of treatment known to be ineffective, *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005), that is not the situation here. Love testified at the preliminary injunction hearing that, after meeting with Dr. Myers in April 2019 to discuss Dr. Bozdech's recommendations, Dr. Myers agreed to start Love on azathioprine. Love has now been on that medication for two to three weeks. While he has not seen much of a change in his bowel movements, Love testified that he understood the medication can take several weeks or months to build up in his system. He also admitted that he feels a little better and can exercise a little more. His stool also is no longer primarily runny and bloody.

Dr. Myers also testified, noting that Love has a mild form of Crohn's disease, which is why he first gave Love the mesalamine enemas. When Love refused to take the prednisone, Dr. Myers began him on the azathioprine. Dr. Myers testified that Love's condition is stable, and there is no need for him to see a gastroenterologist at this time.

Based on this testimony and the evidence in the record, the Court finds Love cannot show a reasonable likelihood of success on his deliberate indifference claim against Dr. Myers at this point in the litigation. Likewise, there is no evidence at this time that the IDOC Defendants knew Love was being mistreated or ignored and chose to turn

a blind eye. Love is receiving the medication he requested in his motion, and currently there appears to be no need to see an outside specialist. Accordingly, Love is not entitled to preliminary injunctive relief.

## Conclusion

For these reasons, the Motion for Preliminary Injunction filed by Plaintiff Abdul Love (Doc. 24) is **DENIED**. Love is **GRANTED** leave to refile his motion should circumstances change in the future.

**IT IS SO ORDERED.**

DATED:   May 13, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**