IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ABDUL LOVE,

       **Plaintiff,**

v.

PERCY MYERS, LARUE LOVE,
CHRISTOPHER THOMPSON,
CHRISTINE BROWN, ROB JEFFREYS,
and WEXFORD HEALTH SOURCES,
INC.,[1]

       **Defendants.**

Case No. 18-cv-2000-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a motion for summary judgment (Docs. 90, 91)

filed by Dr. Percy Myers and Wexford Health Sources, Inc. ("Wexford"). Dr. Myers and

Wexford argue that Plaintiff Abdul Love failed to exhaust his administrative remedies

against them. Love has filed a response (Docs. 97, 98) in opposition. Dr. Myers and

Wexford filed a reply (Doc. 99).

### BACKGROUND

On October 19, 2018, Love, an inmate of the Illinois Department of Corrections

("IDOC") who is currently housed at Pinckneyville Correctional Center

---

[1] John Baldwin was added to the case, in his official capacity only as Director of the Illinois
Department of Corrections, for the purpose of implementing any injunctive relief awarded to
Love. John Baldwin is no longer the Director and, thus, no longer a proper party. Accordingly,
the Court **SUBSTITUTES** Rob Jeffreys, the current Director of IDOC, in his official capacity only
in place of John Baldwin for the purpose of implementing any injunctive relief awarded.

("Pinckneyville"), filed his Complaint pursuant to 42 U.S.C. § 1983 alleging deliberate indifference in the treatment of his Crohn's disease (Docs. 1 and 8). He later filed an Amended Complaint (Docs. 63 and 64) to add additional claims, including a claim against Wexford (Doc. 64, p. 3). He was allowed to proceed on the following claims:

Count 1:     Eighth Amendment deliberate indifference claim against Dr. Percy Myers, Larue Love, Christopher Thompson (in his individual and official capacities), and Christine Brown for failing to adequately treat Love's Crohn's disease.

Count 2:     Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for hiring underqualified physicians.

(Doc. 63, pp. 3-4). The current director of IDOC, now Rob Jeffreys, was added to the case for the purpose of implementing any injunctive relief (Doc. 8, p. 6).

Dr. Meyers and Wexford point to a number of grievances filed by Love, including grievances dated:  July 8, 2018, August 7, 2018, September 7, 2018, and September 28, 2018. In his response, Love argues that only the July 8, 2018 grievance is relevant to his claims. He argues that the other grievances identified by Defendants are not necessary for exhaustion purposes (Doc. 97, p. 10). In his response to Defendants' statement of facts (Doc. 98), however, he states that both the July 8 and September 28 grievances contained allegations against Wexford (Doc. 98, p. 2). Thus, the Court will address both of these.

**July 8, 2018 Grievance**:  This grievance was fully exhausted (Doc. 91-2, pp. 73-83). The grievance included a number of legal citations on deliberate indifference and continuing with an ineffective course of treatment (*Id.* at pp. 75-76). As to his own treatment, Love alleged that he saw the doctor over the "last couple of weeks," the

prescribed enemas were not working, and he was still struggling with fecal incontinence (*Id*. at p. 76). During his last doctor's visit, he showed the doctor the print-out from his specialist indicating that if the medication did not work, he would be placed on an immunosuppressant (*Id*.). He did not mention the name of the doctor he spoke with or the date of the appointments. His grievance mentioned treatment by a specialist, Dr. Bozdech, and Dr. Young, a doctor at Danville Correctional Center. He noted that Dr. Young and his current doctor were ignoring him (*Id*.). He also stated that he was "tired of suing Wexford over their deplorable health care" (*Id*.). Attached to his grievance were medical records from March 2018 as well as a letter from Dr. Bozdech.

In response to the grievance, Love's counselor noted that he was seen by a doctor on July 30, 2018, with a follow-up appointment on August 6, 2018 (*Id*. at p. 75). The grievance officer similarly noted that he was seen by a doctor on those two dates and was being treated for his Crohn's disease in accordance with the previous specialist's recommendations (*Id*. at p. 74). The Administrative Review Board ("ARB") noted that Love failed to comply with 20 Ill. Admin. Code § 504.810 by failing to identify the date that he saw the doctor at issue in the grievance. The ARB further noted that allegations against Dr. Young at Danville were beyond the 60-day requirement. The ARB did rule on the merits of the grievance, finding that the grievance was addressed appropriately by Pinckneyville administration and denied the grievance (*Id*. at p. 73).

**September 28, 2018 Grievance:**  Love again included a number of case citations to ineffective course of treatment and failure to follow a specialist's recommendation, noting that he included the language in his grievances regarding the treatment of his

Crohn's disease in hopes that Dr. Myers or Christine Brown would become aware of his deteriorating medical condition (Doc. 91-2, pp. 20-21). He complained that Dr. Bozdech previously prescribed enemas in 2017, but if the enemas did not work, he was supposed to be prescribed an immunosuppressant (*Id*. at p. 21). After he arrived at Pinckneyville in May 2018, he informed medical staff and wardens that the enemas were not working, but Dr. Myers kept him on enemas rather than prescribing him something else (*Id*.). His grievance also alleged that Wexford provided constitutionally inadequate medical care (*Id*.). He also alleged that Dr. Myers had placed false documents in his medical records (*Id*. at p. 22).

The grievance was filed as an emergency grievance on September 28, 2018, and received by the chief administrative officer ("CAO") on October 4, 2018 (*Id*. at p. 20). The CAO marked the grievance as an emergency, and it was forwarded to the grievance office (*Id*.). On October 15, 2018, the grievance office reviewed the grievance. The grievance officer found that Love was not compliant with the treatment plan ordered by the specialist and non-compliant with the enemas (*Id*. at p. 19). Love had also been monitored in the infirmary and it was noted that he did not have as many bowl movements as he previously stated to doctors. Wexford would not allow a follow-up with the specialist because he was non-compliant and because he did not have issues with bowel movements (*Id*.). The grievance was denied. On October 30, 2018, the CAO concurred with the grievance officer's findings (*Id*.).

On November 5, 2018, Love filed an appeal with the ARB (*Id*. at p. 19). On November 28, 2018, the ARB rejected the grievance because it was not submitted in the

proper timeframe (*Id.* at p. 18). Love arrived at Pinckneyville on May 16, 2018, and complained of care he received since May 2018, but did not file his grievance until September 2018 (*Id.*).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

## A. Illinois Exhaustion Requirements

As an IDOC inmate, Love was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code

§504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Because there are no disputes of material fact, an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was not held in this case.

### A.  Dr. Percy Myers

The parties do not dispute that Love fully exhausted his July 8, 2018 grievance.

Instead, Dr. Myers argues that Love failed to identify him in his grievance and could not have identified him because Love did not see Dr. Myers for the first time until August 7, 2018 (Doc. 54-8). Love argues, however, that Dr. Myers placed a request for a gastrointestinal consult on June 2, 2018 and, thus, must have met with Love prior to approving the request (Doc. 64, p. 40). Dr. Myers indicates in his reply that Love was seen at the General Medicine Chronic Clinic on June 2, 2018 and Dr. Myers was an independent contractor physician at Pinckneyville at that time (Doc. 99, p. 2).

Exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate must, as the very least, "include as much descriptive information about the individual as possible." 20 Ill. Admin. Code § 504.810(a)(b). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox*, 655 F.3d at 722. The Seventh Circuit has consistently reminded district courts that "all that the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought," *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir.2005) (*citing Strong v. David*, 297 F.3d 646, 650 (7th Cir.2002)), and afford prison officials an opportunity to respond. *See Pavey*, 663 F.3d at 905–06.

Here, Love did not identify Dr. Myers specifically, but his grievance complained that he had been seen by a doctor for the last several weeks. In fact, the grievance noted that for the "last couple of weeks" he experienced fecal incontinence and spoke with a doctor (Doc. 91-2, p. 76). He also wrote June 2018 out to the side, indicating that he was referring to care he received in that month (*Id.*). Love was seen in the chronic care clinic on June 2, 2018 and Dr. Myers filled out a referral form on that date (Doc. 64, p. 40). Love provided enough information from which the prison could review the medical records and determine which doctor Love saw in the weeks prior to his July 8 grievance, including the referral from Dr. Myers.

Further, the grievance was reviewed at every level of the grievance process, and it was never rejected for Love's failure to properly identify the doctor that provided his care. The grievance officer noted that Love had been experiencing fecal incontinence for the past couple of weeks and spoke with the doctor about the enemas he was receiving. Although the ARB noted that Love did not provide specific dates that he met with the doctor, a violation of 20 Ill. Admin. Code § 504.810, the ARB did not reject the grievance on those grounds. While the prison administration can refuse to hear a grievance if the inmate fails to properly utilize the grievance process, *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), IDOC officials can excuse a prisoner's non-compliance and review the grievance on the merits. *See, e.g., Riccardo v. Rausch,* 375 F.3d 521, 523–24 (7th Cir.2004) (noting that an IDOC prisoner's grievance was untimely, but that IDOC officials nonetheless resolved the grievance on its merits). Here, the ARB did not reject the grievance because Love failed to properly identify the doctor but ruled on the merits of

Page 10 of 11

the grievance. Any violation for failing to properly identify the doctor was excused.

Thus, Love properly exhausted his administrative remedies as to Dr. Myers.

### B. Wexford Health Sources, Inc.

Wexford also argues that none of the grievances put the prison on notice of Love's

claim regarding Wexford's practice of hiring underqualified physicians. The July 8, 2018

grievance mentioned Wexford and stated that it provided deplorable healthcare. His

grievance also complained about the physicians providing him care and their failure to

follow the specialist's recommendations. This was enough information to put the prison

on notice that he was receiving inadequate care and Wexford was a reason for the

"deplorable" care. The grievance is not required to provide Wexford with notice of the

exact policies Love intended to file suit on. *See Maddox v. Love*, 655 F.3d at 722 (*citing Jones*,

549 U.S. at 219). It was enough that he mentioned actions that could be attributed to

Wexford. Thus, Love also properly exhausted his administrative remedies against

Wexford.

### CONCLUSION

For the reasons stated above, the summary judgment motion (Docs. 90,91) is

**DENIED**.

**IT IS SO ORDERED.**

**DATED:   August 17, 2020**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**